# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| SYLVIA BARRAGAN-GALLARDO, | § | |
| Reg. No. 11710-051, | § | |
|     Movant, | § | |
| | § | |
| v. | § | EP-11-CV-391-KC |
| | § | EP-11-CR-607-KC |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Movant Sylvia Barragan-Gallardo ("Barragan"), a federal prisoner, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct a sentence [ECF No. 32].[1] Therein Barragan challenges her conviction in EP-11-CR-607-KC for transporting undocumented aliens. She claims that but for her counsel's erroneous explanation of the immigration consequences of her guilty plea, she would have pleaded not guilty and insisted on going to trial. After reviewing the record and conducting an evidentiary hearing, the Court concludes that Barragan is entitled to § 2255 relief. The Court will accordingly vacate and set aside the judgment, vacate her guilty plea, and grant her a new trial.

## BACKGROUND AND PROCEDURAL HISTORY

The United States of America ("the Government") has alleged that on February 19, 2011, Barragan drove her brother's green Chevrolet pick-up truck bearing New Mexico license plates into the El Paso Del Norte Port of Entry in El Paso, Texas, from Ciudad Juarez, Chihuahua, Mexico, and applied for entry into the United States. Accompanying Barragan in the truck were six passengers, including a thirty-one year old female passenger identified as "Lorena." In the

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in EP-11-CR-607-KC.

primary inspection area, Barragan presented entry documents to a Customs and Border Protection officer. The officer later claimed that he had noticed discrepancies in the facial features between "Lorena" and the photograph on her passport. Suspecting the woman was an imposter, the officer referred the vehicle to a secondary inspection area where Barragan waived her *Miranda* rights and admitted that she knew "Lorena" was falsely claiming United States citizenship. Barragan claimed that she had met "Lorena" through the internet. Barragan explained that she had picked up "Lorena" at the airport in Ciudad Juarez and had provided her with a false passport. Barragan further explained that she had attempted to smuggle "Lorena" into the United States as a favor because the woman wanted to return to California where she had lived for ten years. Court records later disclosed that Barragan had a prior conviction in the District of New Mexico for transporting undocumented aliens.[2]

Barragan pleaded guilty, pursuant to a plea agreement, to an information charging her with transporting undocumented aliens. The Court accepted her plea and sentenced her to three months' incarceration followed by three years' supervised release. Before Barragan surrendered herself to the Bureau of Prisons to serve her sentence, immigration officials took her into custody and initiated removal proceedings against her.

In her motion, Barragan asserts that her attorney, Miguel A. Villalba ("Villalba"), provided incorrect advice on the immigration consequences of her guilty plea.

> Mr. Villalba had advised me that I was eligible for relief from deportation if I was placed in removal proceedings. In fact transporting aliens is an aggravated felony under immigration law and their [sic] is no relief available. If I had known this I would not have pled guilty.[3]

---

[2] *United States v. Barragan-Gallardo*, 2:96-CR-241-003 (D. N.M. Dec. 18, 1996).

[3] Mot. to Vacate 4.

Barragan asks the Court to set aside her conviction and reinstate her case on the trial docket, pursuant to the Supreme Court's opinion in *Padilla*.[4]

## LEGAL STANDARD

A.  28 U.S.C. § 2255

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted."[5] Accordingly, "'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[6] Typically, before a court will grant relief pursuant to § 2255, the movant must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[7]

Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence.[8] A court may deny a § 2255 motion, however, if "the files and

---

[4] *Padilla v. Kentucky*, -- U.S. -- , -- , 130 S. Ct. 1473, 1486 (2010).

[5] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).

[6] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).

[7] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

[8] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

records of the case conclusively show that the prisoner is entitled to no relief."[9] When a court finds that the movant is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[10] Thus, the Court has "'broad and flexible power' . . . 'to fashion an appropriate remedy.'"[11]

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal.[12] When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted.[13] The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal."[14] If the movant does not meet either burden, then he is

---

[9] 28 U.S.C.A. § 2255(b) (West 2011); *see also United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence–and not necessarily direct evidence–that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

[10] 28 U.S.C.A. § 2255(b).

[11] *United States v. Stitt*, 552 F.3d 345, 355 (4th Cir. 2008) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997); *see also Andrews v. United States*, 373 U.S. 334, 339 (1963) ("[T]he provisions of the statute make clear that in appropriate cases a § 2255 proceeding can also be utilized to provide a . . . flexible remedy."); *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("As an initial matter, we note the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority. . . . This is so because a district court's power under § 2255 'is derived from the equitable nature of habeas corpus relief.'") (quoting *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997)).

[12] *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).

[13] *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999).

[14] *Gaudet*, 81 F.3d at 589.

procedurally barred from attacking his conviction or sentence.[15] This procedural bar does not apply, however, to claims which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.[16]

B. *Ineffective Assistance of Counsel*

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[17] Moreover, "the right to counsel is the right to the effective assistance of counsel."[18] "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal."[19] To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense."[20] A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.[21]

---

[15] *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992).

[16] *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992) (stating that the general rule in the Fifth Circuit is that, except in rare instances where the record on direct appeal is adequate to evaluate such a challenge, an ineffective assistance of counsel claim cannot be resolved on direct appeal because no opportunity existed for the parties to develop the record on the merits of the allegations).

[17] U.S. CONST. amend. VI.

[18] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

[19] *Gaudet*, 81 F.3d at 589 n.5.

[20] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

[21] *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct.[22]  In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[23]  In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[24]  A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice.[25]  The test's prejudice prong requires the movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[26]

With these principles in mind, the Court turns to the merits of Barragan's claims.

---

deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

[22] *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[23] *Id*. at 687.

[24] *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[25] *See id*. at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

[26] *Id*. at 694.

## ANALYSIS

The majority in *Padilla*, held that "counsel must inform her client whether his plea carries a risk of deportation."[27] Elsewhere in its opinion, the majority further explained this requirement:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice ALITO), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. *But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.*[28]

Accordingly, general warnings about immigration consequences are sufficient in areas where the law is "unclear," but more specific advice is required where the law is "clear." This requirement of specific advice in certain situations is a departure from the general rule of *Ruiz*,[29] where the Supreme Court stated that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."[30] In *Padilla*, the Supreme Court carved out an exception from this general standard for aliens who will clearly

---

[27] *Padilla*, -- U.S. at -- , 130 S. Ct. at 1486.

[28] *Id.*, -- U.S. at -- , 130 S. Ct. at 1483 (emphasis added).

[29] *Ruiz v. United States*, 536 U.S. 622 (2002).

[30] *Id.* at 630 (citations omitted).

be deported.[31]

The Court must accordingly determine whether Barragan's situation merited general or specific advice regarding the immigration consequences of her guilty plea. Here, Barragan pleaded guilty[32] to transporting undocumented aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii)[33] and (a)(1)(B)(ii).[34] It is undisputed that the offense to which Barragan pleaded was an "aggravated felony."[35] She was, therefore, "deportable" under 8 U.S.C. § 1227(a)(2)(A)(iii).[36] It is also undisputed that—even as a legal, long-term permanent resident of the United States—Barragan was not eligible for relief from removal proceedings upon her conviction for any "aggravated felony" offense.[37] The Court therefore finds that this was a "clear" case because Barragan's "counsel could have easily determined that [her] plea would

---

[31] *Padilla*, -- U.S. at -- , 130 S. Ct. at 1486.

[32] Plea Tr. 8 [ECF No. 37].

[33] *See* 8 U.S.C.A. § 1324(a)(1)(A)(ii) (West 2011) ("Any person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law . . . shall be punished as provided in subparagraph (B).").

[34] *See* 8 U.S.C.A. § 1324(a)(1)(B)(ii) ("A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs . . . in the case of a violation of subparagraph (A)(ii) . . . be fined under Title 18, imprisoned not more than 5 years, or both.).

[35] *See* 8 U.S.C.A. § 1101(a)(43)(N) (West 2011) ("The term 'aggravated felony' means . . .an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter.").

[36] *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (West 2011) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").

[37] *See* 8 U.S.C.A. § 1229b(a)(3) (West 2011) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of any aggravated felony.").

make [her] eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal."[38]

According to Barragan's trial attorney, Villalba, "[w]hile discussing the immigration consequences of her plea, I fear I may have erroneously explained . . . that she was eligible to qualify for cancellation of removal proceedings."[39] This erroneous advice lacks the extreme specificity now required by *Padilla* in such a "clear" case. Therefore, this advice fell below an objective standard of reasonableness, and the Court must now consider whether Barragan was prejudiced by the advice.

"To prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[40] In her motion, Barragan claims that she would have not pleaded guilty if she had known that her guilty plea would result in her removal.[41]

At an evidentiary hearing conducted on November 1, 2011, Barragan testified that she entered the United States in 1980 and became a permanent resident in 1986. She added that her two children were citizens of the United States, and that her entire family lived in the United States. Barragan explained that she did not discuss the strengths or weaknesses of her case with

---

[38] *Padilla*, -- U.S. at -- , 130 S. Ct. at 1483.

[39] Mot. to Vacate (Aff. of Miguel A. Villalba).

[40] *Bond v. Dretke*, 384 F.3d 166, 167–168 (5th Cir. 2004) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

[41] Mot. to Vacate 4.

Villalba; he merely told her that her case would go faster and easier if she pleaded guilty. She claimed Villalba also told her that it was more than likely she would not be removed upon her conviction because she had lived in the United States for more than ten years and had two children. Barragan maintained throughout the hearing that she relied on Villalba's erroneous advice, and pleaded guilty to the alleged offense based on that advice.

On cross-examination, Barragan conceded that she understood the plea agreement did not say that she could avoid removal. She recalled discussing the potential immigration consequences of her plea during the plea colloquy, but maintained that she merely followed Villalba's advice and answered yes to all of the Magistrate Judge's questions. Barragan also claimed that Villalba told her she would only get probation, and that he would help her with the immigration issues later.

At the evidentiary hearing, Barragan's attorney argued that by pleading guilty, Barragan did not receive a significant reduction in her term of imprisonment; Barragan did, however, receive a lifetime sentence to living outside the United States and away from her family. Barragan's attorney also noted that Barragan had not endangered others, asserted that Villalba had never interviewed the witnesses, and maintained that Barragan had offered "Lorena" assistance as a favor to give her a way back to the United States. He opined that Villalba would have advised Barragan differently if he had known that she would not be eligible for cancellation of removal. Accordingly, Barragan's attorney argued that Villalba's erroneous advice prejudiced Barragan cause, and that there was a reasonable probability that, but for Villalba's errors, Barragan would have pleaded not guilty and would have insisted on going to trial. Thus, Barragan was entitled to relief.

The Government's attorney asserted that Barragan has kept changing her story, and argued that if she was telling the truth now, then she was lying when she signed the plea agreement, lying when she entered her plea, and lying when she appeared at her sentencing hearing. In sum, Barragan was not a credible witness and she was not entitled to relief.

After reviewing the record, listening to Barragan's testimony, and hearing the arguments of counsel, the Court concludes that Barragan has shown that Villalba made errors so serious that he was not functioning as the counsel guaranteed a defendant by the Sixth Amendment, and that there was a reasonable probability that, but for Villalba's unprofessional errors, the result of the proceeding would have been different. Thus, Barragan has shown that Villalba provided constitutionally ineffective assistance, and that she is entitled to § 2255 relief.

Moreover, the Court notes that a plea of guilty waives a number of constitutional rights.[42] Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences."[43] The Court further notes that a defendant's "[s]olemn declarations in open court carry a strong presumption of verity."[44] Thus, a defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath.[45] Moreover, official documents, such as a written plea agreement,

---

[42] *Ruiz*, 536 U.S. at 628; *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969).

[43] *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

[44] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[45] *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

are "entitled to a presumption of regularity and are accorded great evidentiary weight."[46] The Court also notes that in this case, Barragan affirmed at her plea hearing that she understood she could lose her permanent resident status and be removed from the United States upon her conviction.[47] Barragan also indicated in her plea agreement that she understood a guilty plea could affect her immigration status.[48] Nevertheless, based on Barragan's testimony at the evidentiary hearing, the Court finds that, due to Villalba's ineffective assistance, Barragan did not understand the consequences of her plea and it was, therefore, involuntary. The Court will accordingly vacate her guilty plea.

## CONCLUSION AND ORDERS

For the reasons stated, the Court concludes that it should grant Barragan relief. Therefore, the Court enters the following orders:

1. The Court **GRANTS** Movant Sylvia Barragan-Gallardo's motion under 28 U.S.C. § 2255 to vacate, set aside or correct a sentence [ECF No. 32].

2. The Court **VACATES** and **SETS ASIDE** the judgment in EP-11-CR-607-KC, **VACATES** Defendant Sylvia Barragan-Gallardo's guilty plea, and **GRANTS** Defendant Sylvia Barragan-Gallardo a new trial.[49]

3. The Court **ORDERS** the District Clerk to reinstate Defendant Sylvia Barragan-Gallardo's criminal case on the trial docket.

---

[46] *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

[47] Plea Tr. 8.

[48] Plea Agreement 1 [ECF No. 12].

[49] 28 U.S.C.A. § 2255(b).

4. The Court **REFERS** this matter to a United States Magistrate Judge for a detention hearing.

5. The Court **ORDERS** Defendant Sylvia Barragan-Gallardo to appear on November 9, 2011 at 2 p.m. in Courtroom No. 521 of the Albert Armendariz, Sr., United States Courthouse located at 525 Magoffin Avenue, El Paso, Texas 79901, for a status conference.

**SO ORDERED.**

**SIGNED** this 2nd day of **November 2011.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE